UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANNY ROBLES,<br><br>    Plaintiff,<br><br>v.<br><br>MARK SALVATI et al.,<br><br>    Defendants. | Civil Action No. 3:19-cv-566 (CSH)<br><br>**NOVEMBER 9, 2022** |

## RULING ON DEFENDANTS' MOTION *IN LIMINE*

**HAIGHT, Senior District Judge:**

Plaintiff Danny Robles, an African-American resident of New Haven, Connecticut, brings this § 1983 action against officers of the New Haven Police Department. His allegations stem from a motor vehicle stop in April 2017, during which he was pepper-sprayed, kicked, punched, and knelt on. Robles claims that the defendant officers used excessive force, unlawfully searched his person and vehicle, and conducted a pretextual motor vehicle stop on account of his race, and then proceeded to file false reports to hide their misconduct, in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

In anticipation of trial, defendants Mark Salvati and Justin Roselle move *in limine* to preclude certain testimony and evidence. Plaintiff has filed papers in opposition. The Court now resolves the motion.

# I. BACKGROUND

## A. Factual Allegations

The following factual allegations are drawn from the Complaint (Doc. 1), defendants' memorandum of law in support of their motion *in limine* ("Defs.' Mem.") (Doc. 62-1), and Plaintiff's objection ("Pl.'s Mem.") (Doc. 66-1).

In the evening of April 26, 2017, Robles was driving a lawfully rented Jeep 4x4 in New Haven, Connecticut. Compl. at 3 ¶ 9. Robles is an African-American man. *Id.* at 3 ¶¶ 11. Defendants Mark Salvati and Justin Roselle, officers in the New Haven Police Department, were on routine patrol and pulled up behind Robles at a red traffic light. *Id.* at 3 ¶¶ 2, 14. They were able to see that Robles is African-American. *Id.* at 3 ¶ 14. As Robles later discovered, the officers had decided to follow him after seeing him briefly speak with a white male. Pl.'s Mem. at 4.

Officers Salvati and Roselle proceeded to follow Robles through four intersections. Compl. at 3–4 ¶¶ 16–31. At each intersection, Robles came to a complete stop, obeyed traffic lights and signs, used turn signals where appropriate, and in all other regards complied with criminal and motor vehicle laws. *See id.* Robles was traveling along Smith Avenue and nearing his apartment when he reached a fifth intersection, at Cross Street, and again came to a complete stop. *Id.* at 5 ¶¶ 32–33. Cross Street does not have a stop sign at that intersection, and it is difficult for those at the stop line on Smith Avenue to see oncoming vehicles, so Robles inched forward past the stop line to see whether it was safe to proceed. *Id.* at 5 ¶¶ 34–35. Defendants allege that in so doing, Robles failed to yield to multiple cars that had right of way at the intersection. Defs.' Mem. at 1. They also wrote in their police report that Robles did not stop at the stop sign. Pl.'s Mem. at 5. The parties nonetheless agree that as Robles drove through the intersection—the final intersection

before Robles's apartment building—Officers Salvati and Roselle pulled him over in his apartment parking lot. Compl. at 5 ¶ 35.

Robles provided the officers with his license and registration information and asked why he had been stopped. *Id.* at 5 ¶ 38. Officer Salvati instructed Robles to step out of his vehicle, and again Robles asked, "Why?" *Id.* at 5 ¶ 39. According to Robles, Officer Salvati then told him to "get the f— out." *Id.* at 5 ¶ 41. Defendants, in turn, claim that they told Robles to step out to ensure officer safety. Defs.' Mem. at 1. Robles states that around this time, he heard Officers Salvati and Roselle say both "I smell weed" and "I smell coke." Compl. at 6 ¶ 42.

Robles is disabled and uses a cane to walk. *Id.* at 6 ¶ 43. He alleges that he was slowly complying with the officers' order to leave his car when Officer Salvati, growing impatient, dragged him from the car to the ground. *Id.* Defendants agree that Officer Salvati pulled Robles to the ground. Defs.' Mem. at 1. But they claim that Robles was reaching behind his back with his right hand and refusing to show his hands when Officer Salvati grabbed Robles's arm in an attempt to yank it from behind his back, and the force of the yank pulled Robles out of the car and to the ground. *Id.* Defendants allege that they also "heard a distinct sound of a hard object hitting the asphalt" when Robles fell to the ground and that they later saw a pocketknife on the ground within Robles's reach. *Id.* at 1–2.

Robles alleges that the officers then used excessive force against him. *Id.* at 6 ¶¶ 44–48. He claims that Officer Roselle put his knee into Robles's back while simultaneously pushing Robles's face into the roadway; that the two officers both kicked and punched him; and that a third defendant, Officer Eduardo Leonardo, arrived at the scene and pepper sprayed Robles's face while he was lying on the ground, handcuffed. *Id.* Defendants partially contest this version of events,

3

claiming that Robles was struggling, twisting, and yelling in a manner that justified their use of force, and that because Robles's hands were "double cuffed" in two sets of handcuffs linked together, Robles still had substantial range of movement. Defs.' Mem. at 2.

Police searched Robles's car and person and found no marijuana, cocaine, or other contraband. Compl. at 6–7 ¶ 50–51. Robles was held in a cell overnight before being released the next morning. *Id.* at 7 ¶ 52. More than one year later, on July 17, 2018, Robles entered a plea of nolo contendere to a state charge of failing to obey a stop sign, and paid a thirty-five dollar fine. Defs.' Mem. at 2.

Robles alleges that Officer Leonardo filed a false report about the sequence of events leading up to the use of pepper spray, including that Robles did not stop at the stop sign at Smith Avenue and Cross Street. Compl. at 6 ¶ 50; Pl.'s Mem. at 5. Robles also claims that critical context, surfaced during discovery, was excluded from the case incident report. Pl.'s Mem. at 5. Namely, in deposition, the officers testified that before deciding to follow Robles, they had been parked in a Burger King parking lot when they saw him across the street. Pl.'s Mem. at 4. Robles and an unnamed white male engaged in a short discussion and then parted ways. Pl.'s Mem. at 4. The officers chose to follow Robles and not the white male. *Id.* at 4–5. None of this information was included in the police case incident report. *Id.* at 5.

### B. Procedural Posture

Robles brings claims under 42 U.S.C. § 1983 alleging that the officers violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution through

> acts and omissions . . . , including but not limited to:
>   A.  The use of excessive force on the Plaintiff that constituted unreasonable and unnecessary force;

4

      B. The search of Plaintiff's person and vehicle, that constituted an unreasonable and an unconstitutional intrusion into Plaintiff's privacy;
      C. The pretextual motor vehicle stop and seizure of Plaintiff that was the result of unlawful racial profiling;
      D. Filing reports that contained false accounts of what transpired to cover up their misconduct.

Compl. at 7 ¶ 54.

Following the close of discovery, Salvati and Roselle filed a motion *in limine* to preclude evidence regarding Robles's "claims of racial profiling, pretextual motor vehicle stop[,] or the making of a false report." Defs.' Mot. *in Limine* (Doc. 62) at 5. Robles did not initially respond to the motion. *See* Doc. 65. On October 13, 2022, the Court ordered Robles to inform the Court, as soon as practicable, whether he planned to oppose the motion, and to file any memorandum in opposition on or before October 28, 2022. *Id.* Robles timely filed an opposition memorandum. Pl.'s Mem. at 3. The Court now resolves the motion.

## II. LEGAL STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)); *see also SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 262 (D. Conn. 2017). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted). In particular, a motion *in limine* "may be directed toward limiting the subjects about which testimony may be offered, or about which particular witnesses may testify[.]" 3 Moore's Federal Practice, § 16.77[4][d][iii] (Matthew Bender 3d ed. 2009).

5

In the case at bar, a preliminary ruling on the admissibility of evidence concerning Robles's claims of racial profiling, a pretextual motor vehicle stop, and the making of a false report is in the interests of justice.

### III. DISCUSSION

Defendants argue that Rules 401–403 of the Federal Rules of Evidence preclude evidence concerning Robles's claims of racial profiling, a pretextual motor vehicle stop, and the making of a false report. Rule 402 outlines the fundamental principle of the rules of evidence: "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. This standard is a "very low" one. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United v. Al-Moavad*, 545 F.3d 139, 176 (2d Cir. 2008)). *See also Williams v. Geraci*, No. 14-CV-5742 (SIL), 2020 WL 5848738, at *5 (E.D.N.Y. Sept. 30, 2020). "All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise." *Id.* (citing Fed. R. Evid. 402 and *White*, 692 F.3d at 246). "The Court *may* exclude relevant evidence if its probative value is *substantially* outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).

Defendants argue that any evidence concerning racial profiling, the lawfulness of the traffic stop and search, or the making of a false report would be (1) irrelevant under Rule 401 to the excessive-force claim, and, (2) even if relevant, unfairly prejudicial under Rule 403. Defs.' Mem. at 4–5. Furthermore, although they have not sought summary judgment, they argue that "the only

relevant claims for trial are the constitutionality of the motor vehicle stop . . . and the reasonableness of the defendants' use of force" and seek to exclude all evidence as to the other allegations in the Complaint. *Id.* at 4.

This limitation, they argue, follows from two points in the governing caselaw. The first is that pretext is irrelevant to the determination of whether a traffic stop was reasonable. Indeed, the Supreme Court, in *Whren v. United States*, held that a vehicle stop is constitutionally reasonable when an officer has observed a traffic violation, even if the officer subjectively held an ulterior motive to make the stop. *Whren v. United States*, 517 U.S. 806, 810, 813 (1996). In *Whren*, Justice Scalia wrote for a unanimous Court:

> We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.

517 U.S. at 813. *See also United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015) ("If an officer has observed a traffic violation, his actual motivation for stopping the vehicle is irrelevant to whether the stop is constitutionally reasonable."). The second legal conclusion Defendants point to is that "the making of a false report does not itself constitute a constitutional violation under § 1983." Doc. 62-1 at 4. Defendants cite *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) ("The filing of a false report [by a prison guard] does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing.").

Defendants are correct to argue that the evidence cannot be admitted to directly prove claims under the Fourth Amendment that Officers Salvati and Roselle's observation of a traffic

violation was a mere pretext for stopping Robles, or that Officer Leondardo filed a false police report, because neither fact pattern states a cognizable violation of the relevant constitutional rights. But Robles may seek to use evidence of racial profiling and pretext to support his claim under the Equal Protection Clause of the Fourteenth Amendment, as the Supreme Court envisioned in *Whren*.

Additionally, Robles argues that evidence concerning racial profiling, pretext, and the filing of a false police report may be relevant to his Fourth Amendment claims. This is because the alleged acts, without *per se* constituting Fourth Amendment violations, reveal the officers' actions immediately before and after the stop and would therefore provide the jury with "context and insight" into the officers' motivations. Pl.'s Mem. at 5. Robles suggests that the evidence is therefore relevant, not unduly prejudicial, and specifically allowed by Rule 404(b)(2), which permits evidence of other crimes, wrongs, or acts to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); Pl.'s Mem. at 4–5. He argues that the evidence will tend to prove, "at the very least, . . . motive and intent of the defendants, and possibly plan, knowledge[,] and absence of mistake." Pl.'s Mem. at 4.

The admissibility of the evidence under Rule 404(b)(2) therefore hinges on whether an officer's subjective motive is a proper subject of inquiry in a claim of excessive force and unreasonable search and seizure. Whether force used in making an arrest is excessive is analyzed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Balancing the individual and governmental interests "requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting

to evade arrest by flight." *Id.* at 396. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. . . . An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force[.]" *Id.* at 397. Rather, "'reasonableness' . . . must be judged from the perspective of a reasonable officer on the scene[.]" *Id.* at 396. Because the test is objective, evidence going to the officers' motives would ordinarily be irrelevant.

However, as the Second Circuit has summarized, "the Supreme Court has recognized two exceptions to this rule. First, as explained in a footnote in *Graham*, 'in assessing the *credibility of an officer's account of the circumstances that prompted the use of force*, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen.'" 490 U.S. at 399 n.12 . . . (emphasis added). Second, punitive damages are generally available in an action pursuant to 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' *Smith v. Wade*, 461 U.S. 30, 56 (1983)[.]" *Ricketts v. City of Hartford*, 74 F.3d 1397, 1411–12 (2d Cir. 1996). For these reasons, the Court of Appeals held in *Ricketts* that even though the evidence at issue—one officer's alleged exhortation of others to "run . . . over" an individual named Moore (not the plaintiff, Ricketts)—"has no bearing on whether [officers] used an amount of force against Ricketts that was objectively unreasonable[,] . . . the credibility of [the officer's] account of the circumstances leading up to his use of force was at issue, and *Graham* certainly contemplates that juries will consider bias or other ill will in assessing an officer's

9

credibility." *Id.* at 1412.

Here, the parties dispute several fundamental facts regarding the circumstances leading up to the use of force. These disputes include the extent to which Robles posed a threat to officer safety (Robles points to his physical disability and use of a cane to walk; the officers point to the presence of a knife on the scene), the extent to which Robles was actively resisting arrest (Robles claims that he was slowly getting out of his seat; the officers claim that he was reaching behind his back with his right hand and refusing to show his hands); and whether Robles committed any traffic infraction in the first place (Robles says he did not; the officers say he did). The parties anticipate calling as witnesses Robles and Officers Salvati, Roselle, and Leonardo, among others. *See* Trial Mem. (Doc. 61) at 8–10.

Credibility will therefore be a central issue at trial, and so impeachment evidence that addresses the officers' "bias or other ill will," *Ricketts*, 74 F.3d at 1412, will be relevant. Such evidence will not unfairly prejudice Defendants, and even if it did, the risk of unfair prejudice will not substantially outweigh its probative value. *See* Fed. R. Evid. 403. *Accord Johnson v. Marshall*, No. 15-CV-02608, 2018 WL 11222673, at *3 (N.D. Ill. July 9, 2018) (finding "that evidence of [police sergeant's] racial animus is relevant and admissible for the limited purpose of assessing the credibility of [his] testimony and his potential bias against [plaintiff]). *But c.f. Thompson v. Mancuso*, No. CIV.A.08-3638 (LFR), 2009 WL 2616713, at *7 (E.D. Pa. Aug. 25, 2009) (in which then-Magistrate Judge Restrepo excluded evidence that a police officer was later terminated for excessive force in an unrelated incident, where there was "no evidence that the Defendants entered into the encounter [at issue in the case] harboring ill will towards Plaintiffs"). Here, Robles's allegation that the defendant officers deliberately chose to follow him for a considerable distance—

and chose *not* to follow the white male with whom he was speaking—suggests that evidence concerning racial bias may well be relevant to credibility. Evidence of racial animus will also be relevant to punitive damages, which Plaintiff seeks. *See* Trial Mem. at 12; *Smith*, 461 U.S. at 56.

Accordingly, evidence on the subjects of racial profiling, whether the stop was pretextual, and whether a false police report was filed will be admitted insofar as they are relevant to the officers' credibility. Evidence as to racial profiling and whether the stop was pretextual will also be admitted to the extent relevant to Robles's claims under the Fourteenth Amendment's Equal Protection Clause and his claims for punitive damages. Limiting instructions will be issued to that effect.

These conclusions are, of course, subject to Robles's counsel presenting admissible evidence on the subjects, and are therefore subject to reconsideration based on the proffers made by Robles and any other concerns that arise before or during trial.

## IV. CONCLUSION

In accordance with the foregoing analysis, Defendants' motion *in limine*, Doc. 62, is **DENIED**.

It is SO ORDERED.

Dated: New Haven, Connecticut
NOVEMBER 9, 2022

> */s/ Charles S. Haight, Jr.*
> CHARLES S. HAIGHT, JR.
> Senior United States District Judge